IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| JITEN MEHTA | : |
| | : |
| v. | : Civil Action No. DKC 11-2828 |
| | Criminal No. DKC 06-0099 |
| | : |
| UNITED STATES OF AMERICA | : |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is the motion of Petitioner, Jiten Mehta ("Mr. Mehta" or "Petitioner"), to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 103).[1] Also pending is Petitioner's motion for leave to conduct discovery, (ECF No. 106), and a motion to terminate his supervised release (ECF No. 127). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Petitioner's motions to vacate and for discovery will be denied. Supervised release will, however, be shortened to two years.

**I. Background**

Mr. Mehta was a tax preparer who served many immigrant clients in Maryland through his company, JDM World Financial Services Group, Ltd. When a taxpayer came to Mehta, he would

---

[1] All citations to electronic court filings refer to the docket in the criminal case.

have the taxpayer complete a worksheet disclosing expense information that he would then use to determine if the taxpayer would be eligible to file a Schedule A, which lists itemized deductions claimed on the tax return. Mr. Mehta personally interviewed taxpayers who appeared to qualify for filing Schedule A returns, but he did not ask detailed questions in order to determine how accurately to report itemized deductions. Many of the Schedule A returns Mehta filed did not correspond to the information his clients provided. Moreover, although the taxpayers' circumstances varied, their filed returns contained deductions that were similar.

Mr. Mehta also participated in the Refund Anticipation Loan ("RAL") program that allows a taxpayer to obtain an advance on his refund through the tax preparer. Under the RAL program, Mehta would submit a taxpayer return to the IRS and to BankOne, the participating bank, by using Drake Software, an electronic transmitter. BankOne would then send electronic authorization to Mehta, permitting him to issue a check to the taxpayer. Once it was processed, the actual refund was sent by the IRS to BankOne to cover the "loan" made to the taxpayer through Mr. Mehta. BankOne electronically transmitted Mr. Mehta's fees from each transaction through Drake Software to Mr. Mehta's bank account in Maryland.

On the basis of this conduct, Mr. Mehta was charged by a twenty-seven count indictment, filed on March 6, 2006, with aiding and assisting in the preparation of false income tax returns (count 1-16), wire fraud (counts 17-25), and money laundering (counts 26-27). (ECF No. 1); 26 U.S.C. § 7602(2); 18 U.S.C §§ 1343, 1957. The case proceeded to trial on September 18, 2007, and during the trial the Government dismissed the money laundering counts. On September 27, 2007, following a seven-day trial, a federal jury convicted Mr. Mehta of all remaining counts. (*See* ECF No. 55). On April 21, 2008, the undersigned sentenced Petitioner to forty-eight (48) months of imprisonment followed by three years of supervised release, and judgment was entered on the same day.[2] (ECF No. 81). Petitioner appealed, arguing that the district court erred in: (1) denying his motion for judgment of acquittal on the wire fraud counts; (2) denying his motion for a subpoena under Federal Rules of Criminal Procedure 17(c); and (3) calculating the tax loss by extrapolating from a non-random sample of audited returns to

---

[2] The forty-eight month imprisonment term consisted of thirty-six months on count one, a consecutive term of twelve months on count two, terms of thirty-six months on counts three through six concurrent with count one, and terms of forty-eight months on counts 17-25 concurrent with counts one and two. (ECF No. 81, at 3). The judgment against Mr. Mehta states that he shall be on supervised released for a term of one year on counts one through 16, and three years, concurrent, on counts 17-25. (*Id.* at 4).

determine his offense level under U.S. Sentencing Guidelines Manual § 2T1.4(a). The United States Court of Appeals for the Fourth Circuit affirmed on all grounds. *See United States v. Mehta*, 594 F.3d 277 (4th Cir. 2010).[3] On October 4, 2010, the Supreme Court of the United States denied Mr. Mehta's petition for a writ of certiorari. *See Mehta v. United States*, 131 S.Ct. 279 (2010).

On October 3, 2011, while in federal custody, Petitioner timely filed the instant motion to vacate, set aside, or correct his sentence. (*See* ECF Nos. 103 & 105). He also filed a motion for leave to conduct discovery on October 25, 2011. (ECF No. 106). The government opposed Petitioner's habeas petition on February 6, 2012, (ECF No. 111), and Petitioner replied on December 3, 2012 (ECF No. 126).[4] Petitioner was released from federal custody on approximately March 8, 2012. Mr. Mehta then moved to terminate his three-year supervised release term on

---

[3] Petitioner argued on appeal that the district court erred in its sentencing calculations of the total tax loss in multiplying the average tax liability per agreed-upon audit by the 2,500 Schedule A returns Mr. Mehta filed during the last two years of the investigation. The Fourth Circuit agreed with this argument, but held that Mehta received the same sentence that he would have received had the district court not erred in its calculations, and thus the error was harmless. *Mehta*, 594 F.3d at 283-84.

[4] Although Petitioner was *pro se* when he filed the habeas petition on October 3, 2011, Petitioner later retained counsel, C. Justin Brown, who noticed his appearance on October 5, 2012, (ECF No. 121), and filed the reply brief on Petitioner's behalf.

July 17, 2013 (ECF No. 127), the government opposed this motion on August 19, 2013 (ECF No. 128), and Petitioner replied on January 28, 2014 (ECF No. 129).

## II.  Standard of Review

28 U.S.C. § 2255 requires a petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." If the Section 2255 motion, along with the files and records of the case, conclusively shows that petitioner is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be summarily denied. *See* 28 U.S.C. § 2255(b).

## III. Analysis

### A.  Ineffective Assistance of Counsel

Petitioner's Section 2255 motion is premised on acts he believes demonstrate ineffective assistance of counsel.[5] Specifically, Petitioner argues that his counsel was ineffective by: (1) failing to move the court for an automatic dismissal of the indictment for violation of the Speedy Trial Act; (2) denying Petitioner the right to testify at trial; (3) failing to investigate and present witnesses and evidence to support

---

[5] During trial, Petitioner was represented by Paula M. Junghans and Lani C. Cosette with Zuckerman Spaeder LLP.

5

Petitioner's innocence/reduced sentence; (4) failing to move for dismissal of the charges on the ground that the prosecution was instituted for racially biased reasons; (5) failing to request a bench trial instead of a jury trial; (6) failing to request an interpreter at all proceedings; (7) failing to investigate and secure testimony from Petitioner's certified forensic accountant concerning tax loss; (8) failing to seek a shorter sentence based on Petitioner's family ties; (9) failing to negotiate a plea with the Government; and (10) failing to instruct the jury during closing arguments that the money laundering charge was dismissed. (*See* ECF Nos. 103 & 105).

Claims of ineffective assistance of counsel are governed by the well-settled standard adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim under *Strickland*, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 688. To demonstrate actual prejudice, Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In the *Strickland* analysis, there exists a strong presumption that counsel's conduct falls within a wide range of

reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*, 466 U.S. at 688—89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must assess the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from some performance deficiency. *See id.* at 697.

Petitioner's claims of ineffective assistance of counsel are reviewed against these standards.[6]

---

[6] Although Mr. Mehta suggests that an evidentiary hearing on his habeas petition would be appropriate, conclusory allegations, such as ones Petitioner propounds here, are not enough to warrant such a hearing. *See United States v. Roane*, 378 F.3d 382, 401 (4th Cir. 2004); *Raines v. United States*, 423 F.2d 526, 531 (4th Cir. 1970); *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), *abrogated on other grounds by Gray v. Netherland*, 518 U.S. 152 (1996).

**1. The Speedy Trial Act**

Petitioner argues that his trial did not begin within seventy (70) days from the indictment, and that in extending the trial date, "the Court failed to make the statutorily-required 'ends of justice' findings in ordering [] continuances." (ECF No. 105, at 2). Petitioner asserts that his attorney's failure to move for an automatic dismissal on this basis constitutes ineffective assistance.

Under the Speedy Trial Act, a defendant is entitled to trial within the later of 70 days from his indictment or first appearance. 18 U.S.C. § 3161(c)(1); *United States v. Shealey*, 641 F.3d 627, 632 (4th Cir. 2011). The Act excludes certain delays from computation if "the ends of justice served by taking such action[s] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7). Courts granting such delays must provide their reasoning after considering various factors such as whether a delay would result in a miscarriage of justice or the case is so unusual or complex that counsel cannot adequately prepare for trial within the established time limits. *Shealey*, 641 F.3d at 632.

The record plainly contradicts Petitioner's position that the undersigned failed to make the "ends-of-justice findings." Indeed, the parties *jointly* moved to toll the Speedy Trial clock

on April 25, 2006. (*See* ECF Nos. 13, 14 & 111-1). In that joint motion, the parties made the following representations:

> Because of the involvement of third party returns, discovery is anticipated to be extensive. For example, there have been hundreds of Jiten Mehta's clients audited for purposes of preparing the charges against him, and there are thousands of pages of tax and other documents available for review. For reasons unknown to the Government, counsel for defendant did not officially enter the case until April 12, 2006, and is now involved in trial preparation and trial [is] expected to take until May 8 to complete. As of this time, no pre-trial motions have been considered or filed by the defendant. . . . In this case, defense counsel and the government cannot meaningfully share discovery to permit defense counsel to file appropriate pre-trial motions until her trial is completed in early May. . . . In this instance, because of trial counsels' trial schedules, the ends of justice are best served excluding time that would allow defense counsel to consider and to file pre-trial motions, which themselves would toll the Speedy Trial Act.

(ECF No. 111-1, at 3-4). The undersigned subsequently issued an order on April 26, 2006, acknowledging that "the parties are currently involved in trial and cannot share discovery that permits defense counsel to consider and file pre-trial motions until such discovery has been received." (ECF No. 111-1, at 6-7). The undersigned concluded that:

> Pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii), this case is both unusual and complex as contemplated by the statute. That is, the parties require additional time to marshal

> evidence and to determine what motions may
> be filed, if any. Moreover, this case
> involves complex issues and atypical
> discovery related to the filing of false tax
> returns on behalf of third parties and money
> laundering, which involve voluminous
> documents. The Court concludes that in such
> circumstances it is unreasonable to expect
> adequate preparation within the time
> generally set for trials under the Speedy
> Trial Act.
>
> The Court therefore determines that the
> *interest of the defendant[] and the*
> *interests of the public within the 70 non-*
> *excludable days usually set by the Speedy*
> *Trial Act are outweighed by the ends of*
> *justice served by adequate and complete*
> *trial preparation.*

(*Id.* at 7) (emphasis added). The time from the filing of the

motion until the date of trial was excluded.[7]

Contrary to Petitioner's belief, his case involved no

Speedy Trial Act violation, as the April 26, 2006 order made

clear that the complexity of the case and the extent of

anticipated discovery justified a later trial date. The Speedy

Trial Act allows delays for those reasons.[8] *See, e.g., Wackman*

*v. United States*, Civil No. WDQ-11-0889, 2011 WL 5848978, at *4

---

[7] A three week trial was initially scheduled to begin on June 5, 2007, but was later postponed at Petitioner's request until September 18, 2007. (ECF Nos. 15 and 32).

[8] 18 U.S.C. § 3161(h)(8)(B)(ii) allows the court to exclude time from computation if "the case is . . . so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."

(D.Md. Nov. 7, 2011) ("The Court made clear in its December 12, 2006 [sic] order that Wackman's fugitive status and the case's complexity and scope justified a later trial date.); *Bey v. United States*, Civil Action No. RWT-11-3238, 2013 WL 715148, at *7 (D.Md. Feb. 25, 2013) (finding no Speedy Trial Act violation where "with the agreement of counsel for all parties, the Court entered an Order excluding the time period from September 5, 2006, to the trial date of August 21, 2007, from computation for purposes of the Speedy Trial Act. . . . The Court excluded time pursuant to specific provisions of the Speedy Trial Act; namely, 18 U.S.C. § 3161(h)(8), due to the complexity of the case, the extensive documentary discovery, and to allow defendants reasonable time to prepare for trial."). Because Petitioner cannot show any violations of his rights under the Speedy Trial Act, he necessarily has failed to show that his attorney was ineffective for not moving to dismiss the indictment.

## 2. Right to Testify at Trial

Petitioner argues that his trial counsel denied him the right to testify at trial, failing to advise him that he had a constitutionally protected right to testify. (ECF No. 105, at 6). Petitioner maintains that:

> before and during trial, [he] aggressively
> asserted to trial counsel his need to
> testify and explain his position to the jury
> on numerous occasions and although he
> vigorously argue[d] with the trial counsel

11

to testify in his own behalf, trial counsel
did not acknowledge or appreciate the input
for [Petitioner] to exercise this
constitutionally protected right to testify
and that the final decision to testify
belonged to [Petitioner].

(*Id.* at 7).

"[A] criminal defendant has a constitutional right to testify on his own behalf at trial." *United States v. Midgett*, 342 F.3d 321, 325 (4th Cir. 2003) (*citing Rock v. Arkansas*, 483 U.S. 44, 51 (1987)). This right may be waived, provided the waiver is made knowingly and voluntarily. *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002). As the government points out, at the conclusion of the prosecution's case-in-chief, the undersigned inquired at a bench conference about whether the defendant was going to testify. His counsel stated: "I don't think he's going to testify. He certainly reserves the right to make that call at the very last moment, but I don't think so." (ECF No. 111-2, at 2). Petitioner was permitted to follow this exchange through an audio device and, as the government avers, "does not now claim that he had not heard all of this exchange." (ECF No. 111, at 15). This exchange undercuts Petitioner's assertion that he was unaware of or was somehow denied his right to testify. *See, e.g., Fletcher v. United States*, Civil No. PJM-08-1720, 2009 WL 1106522, at *3 (D.Md. Apr. 23, 2009) ("Fletcher's evidence . . . consists only

of his own uncorroborated conclusions, which, standing alone, do not establish that he was 'deprived' of the right to testify."); *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) ("[B]arebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him."); *Siciliano v. Vose*, 834 F.2d 29, 30 (1st Cir. 1987) (affirming denial of defendant's habeas petition without an evidentiary hearing when defendant alleged, "in conclusory fashion, that his attorney refused to allow him to 'testify in [his] own behalf'"). Petitioner's acknowledgement that he went through a "mock trial with other counsel acting as prosecutor to prepare [Mr. Mehta] for cross examination and to testify" further undermines his position that his counsel did not inform him of his right to testify. (*See* ECF No. 105, at 11). Thus, much like the petitioner in *Clayton v. United States*, Criminal No. 7:05CR00007, 2009 U.S. Dist. LEXIS 10705, at *28 (W.D.Va. Feb. 12, 2009), Mr. Mehta acknowledges through his pleadings that he discussed whether or not he should testify with his counsel. Although Petitioner may now regret his ultimate decision not to testify, "the advice provided by a criminal defense lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" *Carter v.*

*Lee*, 283 F.3d 240, 249 (4th Cir. 2003); *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir. 1983). As Judge Messitte reasoned in *Fletcher*, 2009 WL 1106522, at *3, "[t]o hold otherwise would encourage the Court to enter the forbidden realm of second guessing the strategic decisions of trial counsel." *See also United States v. Horne*, 339 F.App'x 343, 348 (4th Cir. 2009) ("Because Horne knew that he could testify if he wanted to, his failure to testify . . . cannot be the product of ignorance of his right. Instead, his failure to testify was of his own choosing; he can not now approach the court and complain of the result of his decision" (internal citations omitted)).

Mr. Mehta also avers that his testimony would have negated the "knowing" and "wilful" element of the charged acts by showing that the errors on the tax returns were unintentional mistakes caused by Petitioner's language barrier and that Mr. Mehta had a history of conducting business in good faith. He further contends that he "was not allowed by the counsel to present about 500 [l]etters of [r]ecommendation from family, friends, clients, spiritual, business and Indian communities," which would have attested to his dedication and good faith in preparing tax returns." (*Id.* at 8). Although Petitioner believes that the outcome of his trial would have been different had he testified, "[m]erely suggesting that counsel's alleged refusal to allow him to testify may have had an effect on the

trial's outcome is insufficient." *Morgan v. United States*, 2010
U.S. Dist. LEXIS 90449, at *14 (N.D.W.Va. Aug. 31, 2010). As
the government points out, "even if Mehta had made such
statements while on the stand, there is no reasonable
probability that the verdict would have been any different."
(ECF No. 111, at 18).[9] This is especially the case given the
testimony from six taxpayers establishing that many of the
Schedule A returns Mr. Mehta filed did not correspond to the
information they provided, along with testimony from two
undercover IRS agents regarding comparable experiences, and
recordings from meetings with Mr. Mehta corroborating this
testimony. Moreover, the government is correct in noting that
the purported 500 recommendation letters regarding Petitioner's
alleged good faith in preparing tax returns - even assuming they
could properly be admitted into evidence – "would have been
irrelevant to the jury's determination of the charged conduct."
(ECF No. 111, at 19); *United States v. Terry*, 366 F.3d 312, 316
(4th Cir. 2004) (denying an ineffective assistance of counsel
claim because conclusory allegations that the uncalled witness
would have denied the charges or impeached a witness "are

---

[9] Notably, Petitioner's counsel argues in the reply brief
that "it is likely that the mere fact that he testified would
have helped to convince the Jury that he was not guilty (despite
the Court's instruction that it could not hold his silence
against him)." (ECF No. 126, at 5). Petitioner's attorney is
mistaken, as "mere likelihood" is insufficient under *Strickland*.

insufficient to establish the requisite prejudice under *Strickland*"); *Fletcher*, 2009 WL 1106522, at *3 ("Given the large body of evidence supporting Fletcher's conviction, Fletcher's unsupported claim that a potential witness might have demonstrated his innocence or impeached a Government witness" is insufficient).[10] Accordingly, this claim also lacks merit.

### 3. Investigation and Presentation of Witnesses To Support Petitioner's Innocence

Petitioner asserts that "trial counsel, from the onset, denied him the right to effective legal assistance in the preparation of his trial because counsel failed to interview, investigate and present evidence necessary to support his innocence. Counsel also denied [Petitioner] the right to prepare an adequate defense." (ECF No. 105, at 14). This is belied by the record. As the government recognizes, "[d]efense counsel proferred the only defense they had to the jury, to wit: that the false information on the tax returns was provided by the clients, not by [Mr.] Mehta. Defense counsel also attacked the credibility of two government undercover agents who testified at trial." (ECF No. 111, at 24-25). Furthermore, "[d]efense counsel's cross-examination of the government

---

[10] Notably, the undersigned acknowledged during sentencing that she received "three-quarters of an inch thick book of letters" on Petitioner's behalf, but that a lot of the lines in the letters were "just copies of what somebody must have given them as a form, and that's not the way to do things." (*See* ECF No. 86, at 139).

witnesses and her summation demonstrated a cogent theory of
defense." (*Id.* at 25). Petitioner's attorney also filed
several pre-trial motions in preparation for trial, including
motions in limine to exclude evidence from Special Agent Robert
Greitzer (ECF No. 39) and to exclude testimony of IRS Agent Rene
D. Brown (ECF No. 40). She also filed a motion for acquittal on
the wire fraud counts. (*See* ECF Nos. 61, 64, 65).

Petitioner also asserts that he prepared "a list of
individuals that he knew would provide the necessary evidence to
show his good intent in the preparation of the returns that were
filed. . . . Each of these witnesses, if called, would have
provided exculpatory and beneficial testimony." (*Id.* at 15).
Specifically, Petitioner identifies the following witnesses as
being helpful to his defense: Accountant Marshall Greene and
Accounting Expert Richard Clark; Leonette Bassi, Mr. Mehta's
assistant manager; Trupti Mehta, Mr. Mehta's former wife; Ankur
Kadakia, Mr. Mehta's former employee; Lydia Velasquez, Mr.
Mehta's former employee; Jenny Portillo, Mr. Mehta's former
employee; Larry Ovuh, Mr. Mehta's former client; and Mahir
Haroun, a certified public accountant. (*Id.* at 15-19).

The government points out, as an initial matter, that both
Leonette Bassi and Trupti Mehta were called as defense witnesses
at trial. (ECF No. 111, at 22). The government further notes
that Ankur Kadakia, a witness for the government, "was

thoroughly cross-examined by defense counsel." (*Id.*). Petitioner's contentions with respect to the remaining individuals are equally unavailing. Specifically, he argues that Lydia Velasquez would have testified that the majority of Mr. Mehta's clients were Hispanic, that Mr. Mehta did not speak Spanish, and as a result, Ms. Velasquez frequently acted as an interpreter and interviewed clients. (ECF No. 105, at 18). As the government argues, however, "this testimony would have been directly contradicted by the full weight of the testimony provided by each of the taxpayer-clients as well as two undercover agents who testified at trial" that Mr. Mehta personally interviewed taxpayers who appeared to qualify for filing Schedule A returns. (ECF No. 111, at 22). The record also would have contradicted Jenny Portillo's alleged testimony. Specifically, Petitioner believes that Ms. Portillo submitted fraudulent returns without his consent using his business name and/or Federal Employer Identification Number ("FEIN"). But as the taxpayer clients testified at trial, Mr. Mehta prepared their fraudulent tax returns.

Petitioner next argues that Larry Ovuh was Mr. Mehta's client for about thirteen (13) to eighteen (18) years, and referred four of the government's taxpayer witnesses at trial, who would have testified on Mr. Mehta's behalf that "he was never induced into taking unlawful itemized deductions while

using [Petitioner's] services." (ECF No. 105, at 19). But instances of preparing lawful tax returns would have been irrelevant to Petitioner's culpability for the charged acts.

Finally, Petitioner asserts that the remaining witnesses are accounting professionals who would have testified that the government incorrectly calculated the tax loss in the case. The government correctly responds that "[t]ax loss [] was not an element of any of the offenses charged in the indictment, and would only have been relevant for purposes [of] calculating the applicable advisory sentencing guidelines of Petitioner after conviction." (ECF No. 111, at 23). In any event, as the Fourth Circuit concluded on appeal, "[b]ecause a reasonable estimate of the tax loss in this case would be in excess of $1,000,000, the district court's error in arriving at its estimate did not result in a longer sentence for Mehta." *Mehta*, 594 F.2d at 283. Based on the foregoing, Petitioner's contention that his trial attorney failed to conduct a proper investigation of actual and potential witnesses - who Petitioner presumably believes would have established his innocence - is without merit.

Petitioner's additional argument that his attorney failed to conduct background checks of the government's witnesses and subpoena tax returns prior to 2005 is also belied by the record. Contrary to Petitioner's current representations, his trial counsel in fact filed a pre-trial motion for a Rule 17(c)

subpoena directing the IRS to produce prior year tax returns, but the undersigned denied this motion. (ECF Nos. 26 & 29). Moreover, Petitioner acknowledges that two out of the six government witnesses were interviewed by Mr. Dorner, the hired investigator, and as to the remaining witnesses, he fails to show a reasonable probability that but for counsel's alleged error, the trial would have resulted in a different outcome. *See, e.g., Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). His self-serving arguments by themselves are insufficient. Accordingly, this claim for ineffective assistance of counsel is also meritless.

### 4. Selective Prosecution

Petitioner argues that he received ineffective representation because his attorney failed to "permit him to provide a statistical study to support his claim of discriminatory prosecution." (ECF No. 105, at 24). Mr. Mehta argues that the prior business owner operated the business in the same fashion as he did, and the majority of clients filed their taxes with the previous owner whom the government did not prosecute. (ECF No. 105, at 22). Mr. Mehta, a native of India, believes that he was targeted solely because of his dark skin and accent. Mr. Mehta also contends that "similarly situated

companies, performing the same services in the surrounding and local vicinity were not investigated – audited or prosecuted." (ECF No. 105, at 23). He believes that trial counsel's refusal to "explore this avenue and defense" resulted in a miscarriage of justice.

This claim is meritless. Prosecutorial discretion is subject to the equal protection component of the Due Process Clause of the Fifth Amendment, which prohibits prosecutorial decisions based on an unjustifiable standard such as race, religion, or other arbitrary classifications. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). To demonstrate a claim of selective prosecution in violation of the equal protection component of the Due Process Clause, Petitioner must present "clear evidence" that the prosecutor's decision "'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.* at 464-65 (*quoting Wayte v. United States*, 470 U.S. 598, 608 (1985)). The Fourth Circuit has held that the standard to demonstrate a constitutional violation for selective prosecution is "particularly demanding." *United States v. Passaro*, 577 F.3d 207, 219 (4th Cir. 2009) (citations omitted) (holding that a defendant must provide evidence to demonstrate that a government prosecutor has acted unlawfully). Here, Petitioner has presented no evidence that the prosecutor's decision had either a discriminatory effect or

was motivated by a discriminatory purpose. *See, e.g., Hayes v. United States*, Civil No. RDB-10-996, 2012 WL 933188, at *2 (D.Md. Mar. 19, 2012). As the government points out, Petitioner merely argues that "he had some unidentified statistical analysis of the prior owner and other businesses similarly situated" who were not prosecuted, which is mere conjecture. (ECF No. 111, at 26) (internal citations omitted). Accordingly, this claim also fails.

### 5. Failure to Request a Bench Trial

Petitioner argues that "he requested that trial counsel motion the court for a bench trial before the court because he felt that the scientific approach used by the government would confuse the jury and thus the need for a bench trial." (ECF No. 105, at 25). Petitioner believes that his attorney's failure to move for a bench trial constituted ineffective representation.

The petitioner's assertion that he would have fared better with a bench trial is conclusory. As Judge Quarles reasoned, "[t]he decision to submit to a trial by the Court rather than a jury is one of tactics. And the selection of one, rather than another, is not grounds for post-conviction relief." *Kang v. Rouse*, Civil No. WDQ-08-2446, 2010 WL 3824227, at *14 (D.Md. Sept. 27, 2010) (*quoting Tucker v. Warden Maryland Penitentiary*, 243 Md. 331, 331 (1966)). Furthermore, Fed.R.Crim.P. 23(a) states that "[i]f the defendant is entitled to a jury trial, the

trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." The record does not show that Mr. Mehta waived a jury trial in writing, but even if he did, his argument assumes that the government would have consented to a bench trial and the undersigned would have approved it as well. In any event, Petitioner cannot establish that he was prejudiced by having a jury trial as compared to a bench trial, and thus this claim also fails.

### 6. Failure to Request an Interpreter

Petitioner argues that his attorney failed to provide an interpreter for him and consequently, Mr. Mehta suffered impaired communication with his attorney and had trouble following the trial proceedings. (ECF No. 105, at 26). Petitioner notes that he is of Indian descent who has utilized interpreters in all aspects of his businesses. Mr. Mehta thus concludes that he "was prejudiced by this error as there is a 'reasonable probability' he would have been able to more fully participate in his defense had he better understood what was transpiring." (*Id.* at 27).

Much like in *Blyumin v. United States*, Civil Action No. DKC 05-2835, 2010 WL 3928601, at *3 (D.Md. Oct. 1, 2010), the record flatly contradicts that a reasonable attorney, or the undersigned, would have been aware of any language barriers.

23

The government correctly points out that Mr. Mehta, who has resided in the United States for over twenty (20) years, "does not specify what, if any, misunderstandings actually occurred with his counsel or what, if any, court proceedings he had difficulty comprehending." (ECF No. 111, at 29). Furthermore, Petitioner's cogent letters and motions in the instant matter undercut his claim that he struggles with the English language. *Blyumin*, 2010 WL 3928601, at *3 ("the court has received several more-than cogent letters and filings from Blyumin in English."); *Gonzalez v. United States*, 33 F.3d 1047, 1051 (9th Cir. 1994) (finding no ineffectiveness where the record did not contain evidence of petitioner's claimed inability to understand English); *Gallo-Vasquez v. United States*, 402 F.3d 793, 799 (7th Cir. 2005) (same). In light of the foregoing, there was no ineffectiveness.[11]

---

[11] Petitioner also submits with the habeas petition a document entitled, "Additional Very Important Grounds." (ECF No. 105-2). In this document, Petitioner argues, *inter alia*, that he was not given an ear plug during the trial. He cites one example when his "counsel was questioning a taxpayer witness whether he was given a deal by the government to be a witness and not pay their debts, [at which point] an objection came from the prosecutor and the Judge called both my counsel and prosecutor." (*Id.* at 4). Mr. Mehta avers that he "was not informed by [his] counsel why the Judge did not allow the witness to answer." (*Id.*). Petitioner fails to show how this exchange in any way jeopardized his proceedings and the ultimate verdict.

**7. Failure to Negotiate a Plea**

Petitioner argues that his attorney failed to negotiate a plea – which may have resulted in a shorter sentence - and did not advise Mr. Mehta regarding the chances of prevailing at trial. The Fourth Circuit has explained that professional norms surrounding plea negotiations require defense to do the following: 1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable outcomes of both the guilt and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision. *Jones v. Murray*, 947 F.2d 1006, 1110-11 (4th Cir. 1991); *see also*, *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012) ("[D]efense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). In addition:

> there is no constitutional right to a plea agreement and . . . the decision to initiate plea negotiations is a strategic decision within the purview of defense counsel. *See Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *Hawkman v. Parratt*, 661 F.2d 1161, 1171 (8th Cir.1981). However, counsel is still required to be a "reasonably effective advocate" regarding the decision to seek a plea bargain. *Brown v. Doe*, 2 F.3d 1236, 1246 (2d Cir. 1993).

*United States v. Pender*, 514 Fed.Appx. 359 (4th Cir. 2013).

Petitioner fails to show that his attorney failed to comply with any of the constitutional requirements with regard to plea negotiations. Petitioner was quite obviously aware of the option to proceed to trial. Indeed, as the government notes, "Petitioner has continuously persisted in his innocence [which the instant motion showcases,] and willingly chose to go to trial to face the charges filed." (ECF No. 111, at 30); (*see also* ECF No. 86, at 131 (sentencing transcript) ("Over the last, I guess, two years or so, I've spent a great deal of time with Mr. Mehta, as well as with his family and the people who work with him, and I know that throughout all that the time and the reason we went to trial is that he fervently believes in his innocence.")). There is no indication that Petitioner's attorney prevented him from making the ultimate decision regarding going to trial. In a situation where a defendant argues that his counsel gave him ineffective advice which led him to go to trial rather than plead guilty, the United States Supreme Court has stated that:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe

> than under the judgment and sentence that in
> fact were imposed.

*Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012). Petitioner has not made this showing.[12] Indeed, Petitioner received a sentence below the guideline range for the offense level. His assertion that his counsel failed to advise him regarding the strengths and weaknesses of his case is also not credible. *See, e.g., Isom v. United States*, Case No. 12-CV-2261, 2013 WL 5642401, at *3 n.1 (C.D.Ill. Oct. 15, 2013) ("This court additionally notes that [p]etitioner's counsel is an experienced and very well respected defense attorney. This court does not believe that Petitioner's counsel did not discuss with him whether he wanted to go to trial and did not make attempts to negotiate a plea."). Moreover, Petitioner does not argue that the government presented a plea offer, which his attorney failed to communicate. *See, e.g., Jones v. United States*, Civil Action No. DKC 2004-3136, 2008 WL 886119, at *3 (D.Md. Mar. 28, 2008) ("[petitioner] does not allege that an agreement was on the

---

[12] Petitioner's attorney argues in the reply brief that *United States v. Brannon*, 48 F.App'x 51 (4th Cir. 2002), is controlling, but the facts of that case are readily distinguishable. In *Brannon*, the Fourth Circuit concluded that "the district court accepted the Government's unverified assertions and ignored [defense] counsel's sworn statements that he had worked out a deal with the Government and that Brannon would have received a substantially reduced [sentence]." *Id.* at 53. Here, Petitioner does not attempt to argue – nor does the government suggest – that defendant was offered a plea agreement, which his trial counsel withheld from him or failed adequately to discuss with him.

table and that Counsel refused to consider it or present it to him, but rather appears to presume that Counsel's mere suggestion of an agreement would produce an agreement."). Accordingly, this claim is also unavailing.

### 8. Failure to Investigate and Secure Testimony from an Expert Concerning Tax Loss

Petitioner argues that his attorney failed to secure expert testimony regarding the correct tax loss figure, and had she done so, he would have received a shorter sentence because the correct tax loss was far below $1 million. This claim is meritless. When Petitioner raised the tax loss issue on appeal, the Fourth Circuit squarely held that the error in calculating total tax loss was harmless and "a reasonable estimate of the tax loss in this case would [still] be in excess of $1,000,000." *Mehta*, 594 F.3d at 283. As the Fourth Circuit recently reiterated, "[t]he district court need not calculate the amount with a pharmacist's precision: the sentencing guidelines require only a reasonable estimate." *United States v. Ukwu*, No. 12-4866, 2013 WL 6136445, at *1 (4th Cir. Nov. 22, 2013). "[T]he government need only make a reasonable estimate of the tax loss." *Id.* at *4. Petitioner contends that "[h]ad counsel put on such expert testimony, Mehta argues that the correct tax loss for Count 1-16 would have been found to be $42,614 and $485,523 for the 318 audited, well below $1 million." (ECF No. 105, at

32).  This is mere speculation.  *See, e.g., United States v. Conner*, 456 F.App'x 300, 306 (4th Cir. 2011) ("we do not believe that Conner was prejudiced by Kelly's decision not to call an expert.  Even had Kelly been able to use an expert to persuade the district court to reject the government's methodology, it is sheer speculation to conclude that the ultimate result would have been a loss determination of less than $2,500,000.").[13] Accordingly, this claim fails.

### 9.  Failure to Seek a Departure at Sentencing for Family Circumstances

Petitioner avers that "[t]rial counsel was ineffective for failing to investigate and present an argument on [his] family ties and circumstances for downward departure."  (ECF No. 105, at 33).  Specifically, Petitioner contends that he informed his attorney that he served as the primary financial provider to his daughter and now-deceased mother in India.  He asserts that "[t]rial counsel refused to investigate and review the information presented by [petitioner]."  (*Id.*).  Contrary to Petitioner's accusations, his attorney – and Mr. Mehta himself – presented this information to the undersigned at sentencing. (ECF No. 86, at 133 ("he has a child and a former spouse who depend on him for their support"); *see id.* at 136 ("I know that

---

[13]  Moreover, as the government points out, Petitioner's counsel vigorously cross-examined Special Agent Robert Greitzer on the tax loss calculation.  (*See* ECF No. 111-3).

I'm really needed by my teenage daughter, Sivani, my ailing old mother and community.")). Moreover, "[d]ownward departures are permitted only in the rare case where the defendant identifies a 'mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." *United States v. Bell*, 974 F.2d 537, 538 (4th Cir. 1992) (quoting 18 U.S.C. § 3553(b)). The Fourth Circuit has held that in order to justify a departure on the basis of family responsibilities, a defendant must show that his situation is somehow "extraordinary." *Id.*; *United States v. Brand*, 907 F.2d 31, 33 (4th Cir. 1990); *United States v. Goff*, 907 F.2d 1441, 1446 (4th Cir. 1990). Much like the defendant in *Bell*, Petitioner showed "nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts spousal and parental relationships, and that simply is not a sufficient basis for a departure." *Bell*, 974 F.2d at 539 (internal citations omitted); *Brand*, 907 F.2d at 33 (holding that even a single mother in sole custody of her children does not assert an "extraordinary" family situation). Accordingly, Petitioner cannot show that his attorney's performance fell below an objective standard of reasonableness.

**10. Money Laundering Charges**

In a separate document entitled "Additional Very Important Grounds," Petitioner asserts that the money laundering counts were dismissed during trial "when the jury [was] not present and [the dismissal] was never discussed with them at all." (ECF No. 105-2, at 2). He states that the money laundering charge was presented in the voir dire and the prosecutor referenced this charge in the opening statement. Mr. Mehta believes that his attorney should have discussed in her closing statement that the money laundering charge was dismissed because the "[j]ury was tainted, colored and influenced by way of a property purchased through evidence of cashier's check." (*Id.* at 3).[14]

First, the undersigned explained to the jurors that their decision must be predicated on evidence and not the statements of counsel. Specifically, the undersigned stated:

> [y]ou are to consider only the evidence in the case. . . . The statements and arguments of counsel and questions which they ask containing assertions of fact are not evidence, and should not be considered as evidence, unless made as stipulation.

(*See* Jury Instructions, at 4, 09/27/2007). Second, as Petitioner's counsel acknowledges in the reply brief, the jury instruction was abundantly clear as to the charges, which did

---

[14] The indictment alleged that Mr. Mehta used illegally obtained money to facilitate the purchase of two houses.

*not* include money laundering.   The undersigned specifically
advised the jury:

> You are about to be asked to decide
> whether or not the government has proven
> beyond a reasonable doubt the guilt of the
> defendant as to *specific charges*. . . .
> Your verdict should be based solely upon
> the evidence or lack of evidence as to the
> defendant, *as to these charges*, in
> accordance with my instructions.

(*Id.* at 14) (emphasis added).   Notably, the jury was only
instructed as to the following charges: aiding and abetting in
the preparation of false tax returns (counts one through
sixteen); and wire fraud (counts seventeen through twenty-five).
See*, e.g., United States v. Mackins*, 315 F.3d 399, 415 (4th Cir.
2003) (jury instructions that each charge and the evidence
pertaining to it and the defendant to whom it refers should be
considered separately strongly indicates that "the members of
the jury were quite capable of distinguishing between the
different defendants on the different counts").   Accordingly,
Petitioner's assertion that the jury somehow considered the
money laundering charges in rendering a guilty verdict on the
wire fraud and aiding and abetting in the preparation of false
tax returns charges is conclusory and contradicted by the
record.[15]

---

[15] Petitioner's additional arguments that his trial counsel
did not provide a copy of the trial and appeal preparations to
him and that he was only allowed to read a copy of the grand

**B.    Petitioner's Motion for Leave to Conduct Discovery**

Petitioner seeks the following discovery related to his Section 2255 petition: (1) all tax returns related to the six individuals named in the indictment who filed tax returns prepared by other tax preparers three years before and after the investigation in Mr. Mehta's case; (2) all tax returns filed by Jenny Portillo using Mr. Mehta's company name or its federal identification number; (3) a deposition of Jenny Portillo; (4) a deposition of Mr. Mahir Haroun, CPA, along with copies of all analyses and records prepared by Mr. Haroun to challenge the indictment's statistics; (5) a deposition of Marshall Greene and Richard Clark; (6) a deposition of Leonnette Bassi; and (7) copies of all documents from the grand jury transcripts.  (ECF No. 106).

Rule 6(a) of the Rules Governing Section 2255 Proceedings states that "[a] party may invoke the processes of discovery . . . if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."  In *United States v. Roane*, 378 F.3d 382, 402-03 (4th Cir. 2004), the Fourth Circuit cited the following as the proper standard in considering such claims: "good cause for discovery exists when a petition for habeas corpus establishes a

---

jury transcripts for a few hours in her office are insufficient to establish ineffective assistance of counsel under *Strickland*.

prima facie case for relief." (internal citations omitted).
Discovery is warranted, "where specific allegations before the
court show reason to believe that the petitioner may, if the
facts are fully developed, be able to demonstrate that he is . .
. entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09
(1997). Mr. Mehta has failed to make the required showing here.
Petitioner fails to articulate a plausible theory of ineffective
assistance of counsel, and thus cannot establish good cause for
discovery. Accordingly, this motion will be denied.

### C. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings
under 28 U.S.C. §§ 2254 or 2255, the undersigned is required to
issue or deny a certificate of appealability when it enters a
final order adverse to the petitioner. A certificate of
appealability is a "jurisdictional prerequisite" to an appeal
"only if the applicant has made a substantial showing of the
denial of a constitutional right." 28 U.S.C. § 2253(c)(2).
Where the court denies a petitioner's motion on its merits, a
prisoner satisfies this standard by demonstrating that
reasonable jurists would find the court's assessment of the
constitutional claims debatable or wrong. *See Miller-El v.
Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529
U.S. 473, 484 (2000).

Upon review of the record, the undersigned finds that Petitioner does not satisfy the above standard. Accordingly, it will decline to issue a certificate of appealability on the issues which have been resolved against Petitioner.

**D.    Motion to Terminate Supervised Release**[16]

Section 3583 is the general section instructing district courts on the parameters of supervised release. The relevant text of Section 3583(e) provides:

> (e) Modification of conditions or revocation. – The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6), and (a)(7) –
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e). The plain language of the statute illustrates that Section 3583(e), in the typical case, allows a conduct-based inquiry into the continued necessity for supervision after the individual has served one full year on supervised release.

---

[16] Petitioner filed this motion *pro se*.

Petitioner submitted a letter on July 17, 2013 requesting that the undersigned terminate his supervised release. (ECF No. 127). He supplemented this submission on January 28, 2014, stating that he has "served more than twenty two (22) months of [his] required probation period." (ECF No. 129). Petitioner asserts that his "request to shorten [his] supervision period is due to [his] personal and career development." (*Id.*). Mr. Mehta asserts that his "career is the only one [he] know[s] and [his] only means of livelihood and [he] really wanted to move forward, work hard and do [his] very best to start a new life that will help [him] progress and get back to [his] own feet." Mr. Mehta avers that he has met all the conditions of his supervised released by participating in a mental health evaluation; providing on a monthly basis his financial information and tax related records to the probation officer; not opening any new lines of credit; and fully satisfying the financial obligation from his judgment. Mr. Mehta stated that he has "paid [his] fine and special assessment in full."[17] Petitioner also indicates that he has been employed for more than a year and is serving under the least restrictive form of supervision.

---

[17] The record reflects that an order of satisfaction was entered on August 18, 2008, showing the principal, interest, and costs as paid, settled, and satisfied. (ECF No. 96)

The decision whether to modify a term of supervised release is a discretionary one. Supervised release is intended to facilitate training and rehabilitation, *Johnson v. United States*, 529 U.S. 694, 709 (2000), and to achieve the statutory goals of sentencing to account for: the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. §§ 3553(a)(1); the need for the sentence imposed to afford adequate deterrence to criminal conduct, and to provide the defendant with needed educational or vocational training or other correctional treatment in the most effective manner, 18 U.S.C. § 3553(a)(2)(B) & (D); the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, 18 U.S.C. § 3553(a)(6); and the need to provide restitution to any victims of the offense, 18 U.S.C. § 3553(a)(7).

Here, the government's arguments opposing Petitioner's motion to terminate his supervised release were persuasive at the time initially asserted. Specifically, the government pointed out that one of the conditions of Petitioner's supervised release is that he "work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons." (ECF No. 81, at 4). The government argued that "[t]here are no reasonable means of assurance, other than through the continued supervision

by the U.S. Probation Office, that defendant would continue his compliance with the Court's orders if supervised release were to be terminated . . . prior to its expiration." (ECF No. 128, at 1-2). At that time, Petitioner had completed less than half of his supervised release term. He is now nearly two thirds through the period, and the probation office supports early termination. Accordingly, this motion is granted. Supervised release will be terminated as of March 8, 2014, when Petitioner will have completed two years of supervised release.

## IV. Conclusion

For the foregoing reasons, Petitioner's motions to vacate, set aside, or correct his sentence and for leave to conduct discovery will be denied. Petitioner's motion to terminate supervised release will also be granted. A separate order will follow.

                 /s/
DEBORAH K. CHASANOW
United States District Judge
